Henderson, J.
There is no serious dispute or issue as to the facts in this case. They may be briefly outlined as follows:
1. Prior to 1894, there was in Washington township a school sub-district, No. 11, embracing the territory in question and here-' after referred to, and perhaps some other territory; this sub-district was abandoned in 1894.
2. In May, 1909, verbally, and in June, 1909, by formal written petition, S. Matheny and others, parents residing and owning lands and having children of school age within this territory, requested the board of education of Washington township to establish a sub-district and to build a school house, at or near the meeting corners of Sections 20, 21, 28 and 29 in said township.
*506 3. That the board of education in effect denied their request, and about July 10, 1909, the same petition was presented^ county commissioners.
4. That such proceedings were had on this petition before the county commissioners, acting under the supposed authorization of Revised Statutes, Section 3969 (General Code, 7610), that on August 16,1909, said petition was granted, a new sub-district was created one mile square, embracing the southeast quarter of Section 20, the southwest quarter of Section 2, the northwest quarter of Section 28 and the northeast quarter of Section 29, and it was ordered that a new school building be forthwith built and equipped, and that for expenses arising from this action, an additional levy of two mills for the Washington township school district be levied and certified; the attempt to carry out this order of -the commissioners has led to this action, wherein the board of education of Washington township seek an injunction against further proceedings under the orders of the commissioners.
5. That twenty-two children of school age, mostly from four families, live within one-half mile of and will attend the proposed school; that without the proposed school, these children are attending the district schools to which they have been assigned by the board of- education, will toe obliged to travel upwards of 1.5 miles, partly over mud -and muck roads, which are low and at certain times of the year almost impassible to children of tender years.
6. That the board of education of Washington township, a township of the usual size, six miles square, maintain eleven elementary schools in as many sub-districts in said township, having capacity for about forty-fivé .pupils each and with an average attendance last year of twenty-eight pupils each.
7. That there is ample capacity for the twenty-two children of this proposed new district in the schools in the district to which they have respectively been assigned by the board of education; and that these schools offer the requisites of educational advantages in' the way of buildings, equipment, teachers and branches taught.
*507 Under this state of facts, did the county commissioners have the legal right to supersede the board of education of Washington township, and to take into their hands the power conferred by law primarily upon that board, as it is alleged and admitted it is now attempting to do ?
The school electors of each school district elect a board of education for their district schools; into the hands of this board of education the law of our state commits, in general, all the powers granted respecting the maintenance of schools in such districts; such as the determination of the number of school houses necessary, the selection and purchase of sites, the building and equipment of school houses, the assignment of pupils thereto, the rules and regulations governing the conduct of pupils, the course of study, text-books and grading, the hiring and payment of teacher and other instructors, and the raising of money by taxation to meet proper and legal expenditures; these powers are broadly vested in the local board, who, in the judgment of the law, are best qualified by residence, interests and local knowledge, to exercise them carefully, wisely and with discrimination, to the best interest of the school children of the district, which is the ultimate aim and just purpose of all school legislation.
As a rule courts will not interfere with board of education in" the exercise of these functions. The control and management of the schools of this state is given to the boards of education by the statute, and these boards can not be interfered with in any manner by the court unless there is a gross abuse of the discretionary powers given. Youmans v. Board of Education, 13 C. C., 207; Board of Education v. Minor, 23 O. S., 211; State v. McCann, 21 O. S., 205; State v. Board of Education, 76 O. S., 297.
Nevertheless, the authority of the board of education is not final in all matters; a certain supervisory power invested in the county commissioners by Revised Statutes, Section 3969, and in this case it is claimed that the county commissioners, defendants, are acting and about to act properly and legally within the provisions of that section, which provides as follows:
“If the board of education in any district fail in any year to estimate and certify the levy for a contingent fund as required *508 by this chapter, or if the amount so certified is deemed insufficient for school purposes, or if it fail to provide sufficient school privileges for all the youth in school age in the district or to provide for the continuance of any school in the district for at least thirty-two weeks in the year, or to provide for each school an equitable share of school advantages as required by this title, or to provide suitable school houses for all the schools under its control, or to elect a superintendent or teacher, or to pay their salaries, or to pay out any other school money needed in school administration, or to fill any vacancies in the board within the period of thirty days after such vacancies occur, the commissioners of the county to which such district belongs, upon being advised and satisfied thereof shall do and perform any or all of said duties and acts, in as full a manner as the board of education is by this title authorized to do and perform the same; and all salaries and other money so paid by the commissioners of the county, shall be paid out of the county treasury as other county expenses are paid, but the same shall be a charge against the school district for which said money was paid, and the amount so paid shall be retained by the county auditor from the proper funds due to such school district, at the time of making the semiannual distribution of taxesand the members of a board who cause such failure shall be each severally liable in a penalty not to exceed fifty or less than twenty-five dollars, to be recovered in a civil action in the name of the state upon complaint of any elector of the district, which sum shall be collected by the prosecuting attorney of the county and when collected shall be paid into the treasury of the county for the benefit of the schools of the district. ’ ’
It will be noted that some of these powers committed to the county commissioners after default on the part of the board of education, such as certifying the levy, hiring and paying teachers, etc., are ministerial merely in their nature, and that some of them are judicial. As to the ministerial acts, the law is simple; if the local board of education fails to perform them, the county commissioners step in, upon being advised and satisfied of such default, and perform them in the place and stead of the local boards.
As to the exercise of judicial powers, the case is different. The county commissioners in such cases can not interfere merely by reason of a difference of opinion; they certainly have no higher powers than the courts have; that is, they can only interfere and *509 assume the functions of the local board, when that board has acted, or declined to act, in such a way as to show a gross abuse of discretion. Watkins v. Hall, 13 C. O., 255; State v. Board of Education, 1 C.C.(N.S.), 486.
The Court of Common Pleas of Champaign County, in the case cited from 4 N.P.(N.S.), 433, held that the county commissioners had no power whatever over local boards of education, so far as concerned the exercise of their judicial powers; the court has not found it necessary, and might not find it advisable, to go to that extent, but it seems clear that the powers of the county commissioners are at least limited as above stated. ■ To hold otherwise, that county commissioners have general supervision over acts committed to the judgment of a local board of education, would create intolerable conditions, would demoralize schools and communities by permitting endless appeals on almost all subjects by dissatisfied parents; and would take the final word of authority as to the control and management of schools out of the mouths of specially informed, vitally interested and responsible local boards, and put it into the mouth of a more or less alien tribunal, possessing no special interest in the subject, no special means of information and without direct responsibility to the district affected.
Defendants in this case insist that the acts which the plaintiff board of education refused to do, and which they are proposing to do in its stead, are ministerial acts only.
Plaintiff board duly estimated and certified a levy for a contingent fund; defendant board deemed such levy insufficient, and is attempting to add 1.6 mills thereto; plaintiff board, in the judgment of defendant board, “failed to provide sufficient school privileges for all youth of school age in the district” and defendant board is attempting to create a new sub-district, to choose a site and acquire real estate for a new school house, to build and equip the same and to assign pupils thereto .
Are these acts ministerial acts? A ministerial act, according to he accepted definition, “is one which a person performs in a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to, or the exercise of, his own judgment upon the authority of the act being done. State v. Nash, 66 O. S., 558.
*510 Judicial acts, on the other hand, involve the investigation and determination of a state of facts, an act of choice or discretion or judgment as to the propriety of actions to be taken in reference to the facts thus ascertained.
In this case the palintiff board of education, considering the welfare and financial needs of its whole district of thirty-six square miles including the square mile here concerned, estimated and certified a levy upon the taxable property of the district, sufficient to meet fiscal demands upon it; the defendant board of commissioners considering the same subject, deemed the levy insufficient and added two mills thereto. The plaintiff board in like manner, considering the welfare of the school youth of the whole district, deemed that its existing eleven elementary schools afforded sufficient and, as nearly as practicable, equal school privileges for the youth of school age ip. the district of thirty-six square miles, including the square mile here concerned; the defendant board, considering the same subject-matter, reached the conclusion that the local board was wrong and proceeded to rectify the supposed mistake.
Nothing is needed beyond the foregoing statement of the differences between these two boards, to show clearly and unmistakably that the acts which the plaintiff board declined to and which the defendant board is proposing' to do in its stead, are judicial acts, involving consideration of a subject-matter, and an act of choice or judgment as to the propriety of actions to be taken in reference thereto.
The court does not pretend to say which of these two boards is correct in its conclusion; does not pretend to say whether or not a new school house should be built and. equipped as desired by the petitioners; what the court can and does hold is, that the plaintiff board in its action upon this subject, was not so clearly and unmistakably wrong as to show a gross abuse of the discretion confided to it by law.
In the place of the petitioners, the court, and every other parent would certainly strive to obtain for his children the most convenient and accessible means of education; that is their only thought and interest; but many other factors must be considered *511 by the board of education, having in mind, equally and impartially, the school youth of the whole township. It is apparent that a great part of the inconvenience and disadvantage of which petitioners complain, arises from the bad condition of the roads which their children are obliged to'travel; surely the board of education is not responsible for the condition of the roads. Again as has been shown eighteen of the possible twenty-two pupils of the proposed new school, come from four families living near the section corners, ñve each from C. E. Ludwig and Henry Willeke and four each from Matheny and Sarah Willeke; it might well be deemed that so many children of school age, in such a small neighborhood, was an unusual and témpora,ry condition; that in a few years there might be only six or eight or ten in the same neighborhood; and that to build a school house to satisfy an unusual and temporary situation, when such school house might have .to be abandoned in a few years, would be an unwise and short-sighted use of the school funds of the township.
It is urged in argument by defendants that the law guarantees equal schoolp rivileges to all children of school age in the district; with reference to the distance to be traveled, it is evident that this does not mean a literal equality, but an equality as nearly as practicable; otherwise there would have to be a school house equi-distant from every residence containing school children, which would be an absurdity. The requirement as to equality is satified when the children of each sub-district, on an average, as nearly as practicable has equal distance to travel, as compared with the children of any other sub-district. Thus measured, no just criticism can be urged against the present distribution of schools in Washington township.
It is further urged that the law requires, imperatively, school houses distant not more than 1.5 miles from the residence of the furthest pupil; the court regards the words of the law on that subject as an expression of policy to be attained as nearly as possible' as a direction and nnot as a command. The law itself recognizes that its direction may not always be literally complied with, by attempting to provide transportation for pupils more distantly located; unfortunately, this provision of law as to trans *512 portation, on account of the peculiar situation here can not be applied to the cases of the children of the petitioners; but the Legislature and not the courts must provide for all such omitted cases. The children of the petitioner are not alone in this regard ; they have not been discriminated against; and inspection of the map and plat shows that with perhaps a single exception some pupils in each sub-district in Washington township are obliged to travel from 1.5 to two miles, in order to attend the school house to which they have been assigned.
The court sympathizes with the petitioners in their efforts to obtain better and more convenient school advantages for their children. In an especial degree, the court sympathizes with the children themselves, in view of the obstacles and difficulties they are compelled to overcome in their attempts at school attendance; but the court acting only as the mouth-piece of the law, can not say the board of education of Washington township, in its action upon the request presented disregarded the duties imposed upon it by law, to such an extent as to show a gross abuse, or any abuse at all, of the judgment and discretion with which it is entrusted; consequently, the defendant board of commissioners is acting and proposing to act without proper authority, and the temporary injunction heretofore granted against it should be made perpetual, and it is so ordered'.